**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JOHN ANTHONY CASTRO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| *v.* | ) | Case No. _____ |
| | ) | |
| **GEORGETOWN UNIVERSITY,** | ) | |
| **AND NAN HUNTER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiff John Anthony Castro (hereinafter "John Castro" or "Castro"), files this lawsuit against Georgetown University and Nan Hunter (hereinafter "Defendant Georgetown," "Georgetown," "Defendant Hunter," "Hunter," or collectively "Defendants") on behalf of himself and alleges, by and through his attorney of record, as follows:

### JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action under 42 U.S.C. §1981. This Court further has jurisdiction over this action under 28 U.S.C. §1332.

2. This is a suit arises under the Civil Rights Act of 1871, specifically 42 U.S.C. §1981, Title VI of the Civil Rights Act, specifically 42 U.S.C. §2000d, the United States Constitution, the District of Columbia Human Rights Act, and other D.C. Law.

3. Venue is proper in this Court under 42 U.S.C. §1981 because this is a civil action, and all or a substantial portion of the persons or property the subject of this suit is located in Texas.

4. Specifically, the sum sought to be recovered is $5,000,000.00 in actual and

compensatory damages.

## PARTIES

5. John Anthony Castro, is an individual, whose office address is 13155 Noel Road, Suite 900, Dallas, TX 75240.

6. Defendant Nan Hunter is Associate Dean of the LL.M. and S.J.D. programs at Georgetown University Law Center. Defendant may be served at her office at Georgetown University Law Center located at 600 New Jersey Ave. N.W., Washington, D.C. 20001.

7. Georgetown University is a non-profit corporation organized under the laws of the District of Columbia that receives Federal financial assistance. Georgetown University may be served at the office of its General Counsel 37th and O Streets, N.W., Washington D.C. 20057.

## FACTUAL ALLEGATIONS

8. John Anthony Castro is the founder and managing partner of a U.S. based International Tax law firm known as Castro & Co., LLC (hereinafter "Castro & Co.") that specializes in International Tax matters. Services provided by Castro & Co. to clients include: U.S. based Federal annual tax compliance, issuing tax opinions on complex International and Tax Treaty compliance issues, tax return amendments, tax planning and consulting, among other tax matters.

9. Castro attended Georgetown University Law Center (hereinafter, "Georgetown") where he earned his Master of Laws (LL.M.) Degree in International Taxation.

10. During the time he was attending Georgetown, Castro was contacted to request his presence at a meeting with the Dean. Upon his insistence he was informed that the meeting was in regard to his résumé which the school had occasion to review as the annual spring job

fair held on campus was scheduled to occur shortly and Castro intended to search for employment at the event.

11.     Castro was informed of the meeting time and confirmed that he would be able to attend at the scheduled time. Castro attended the meeting with the Dean and during the course of the meeting discovered that the meeting was specifically regarding his West Point attendance and service on his résumé.

12.     For background, in the wake of the terrorist attacks of 9/11, Castro, who had close friends who lost loved ones, decided he wished to join the military.  In mid-September, 2001, Castro went to his local Army recruitment center to sign up for military service.  As with any other hopeful recruit, the recruiter administered the ASVAB test.  Upon reviewing his ASVAB results, the recruiter told Castro he would be unwilling to accept his application.  His reasoning was that Castro had returned a perfect score on the ASVAB; this indicated to the recruiter that Castro would be better served to attend one of the United States prestigious military academies, such as the United States Military Academy at West Point.  Castro took the recruiter's advice, decided he wanted to attend West Point, and began the rigorous process of applying to West Point.

13.     After meeting all necessary requirements for application to West Point (getting a congressional nomination, passing a rigorous physical aptitude exam, interviewing with West Point, and taking the necessary written examinations), Castro was ultimately conditionally accepted to West Point.  The condition to Castro's acceptance was that his reading and writing skills needed substantial improvement and he would begin his academic curriculum at the preparatory school: the United States Military Academy Preparatory School (USMAPS).  This meant that Castro's track through West Point would be a 5-year track as opposed to the 4-year

track. Castro accepted the offer.

14. Castro ultimately attended West Point for a full year before he withdrew and received an Honorably Discharge as indicated on his DD-214.

15. Defendant called into question Castro's inclusion of West Point on his résumé because he was not admitted into the 4-year program. Upon hearing Castro's explanation (a longer version of what is described in para. 11-13), Defendant requested that Castro produce all records of his application to West Point, including his Congressional Nomination and Letter of Acceptance, among other documents.

16. After producing all such documentation and proving that his story was true and not a fabrication Defendant implied that Castro had misled his high school in the information provided for the announcement of scholarships. Again, Castro produced a document from the local Army recruiter in which Castro had requested information on how the high school should announce his West Point acceptance and scholarship. Again, this document showed that Castro had done nothing dishonest or misleading.

17. Still not satisfied, Defendant then turned to attacking Castro on the fact that he had listed "West Point, New York" as the location of West Point on his résumé and entirely omitted the fact that he was attending classes at nearby Fort Monmouth, New Jersey. Defendant informed Castro that on the grounds of his failure to include Fort Monmouth, New Jersey as the location of his attendance during his West Point tenure, she intended to initiate expulsion proceedings.

18. Castro appealed to the Dean of Georgetown University to inform him of the situation and that Castro felt racially targeted by Defendant, the Associate Dean of LL.M. and S.J.D. students at Georgetown University Law Center of which Castro was an LL.M. student.

The Dean of Georgetown University heard Castro's appeal and appointed an independent law professor to review Castro's circumstances to determine if expulsion was an appropriate action for Georgetown to take against Castro.

19. Castro repeated his story to the independent law professor appointed to review his circumstances, noting that he had no intention to mislead anyone and that he could not understand why he would be scrutinized over his military service of which he was proud to have been afforded such an opportunity. The independent review ultimately concluding that Castro's infraction, if any, was certainly not substantial enough to merit expulsion proceedings.

20. Defendant, upset that Castro had gone to the university Dean to complain about her attempt to expel Castro, determined that an appropriate "punishment" would be to exclude Castro from participation in the annual on campus job fair for Tax LL.M. students. Castro was unable to participate as a student and soon to be graduate of Georgetown with a Master of Laws in International Taxation.

21. Half a decade later, Castro has built a thriving international tax practice and, looking to grow his practice, he applied to Georgetown Career Services for his firm, Castro & Co., LLC, to be part of the Taxation Interview Program (TIP). Castro, as a Georgetown Alum, hoped to hire a recent Georgetown graduate to help grow his practice. As noted on Georgetown's Taxation Interview Program webpage, the program enables private and public-sector employers to interview some of the most promising young tax students in the country. This is based on the prestige of the Georgetown Master of Laws in Taxation program, and because Georgetown partners with New York University School of Law to showcase student from two top Master of Laws in Taxation programs at the same event.

22. Castro was notified that his application for his firm to participate in the TIP had

been denied. Upon contacting the Career Services Center to determine why the application was denied, Castro was informed that Nan Hunter, Defendant in the present action, had noticed his application and had contacted Career Services and instructed them to deny the application with no further explanation.

23. Based on the above background, it is clear that Defendant's action in preventing Castro and his firm from recruiting at the TIP is further racially predicated animus against Castro. Castro is a clearly Hispanic individual and Defendant's concerted actions continually targeting Castro are in clear violation of Castro's Constitutional rights, and Castro is being denied equal protection because of his race through Defendant's conspiratorial actions.

## COUNT I
### Intentional Discrimination – Defendant Hunter
### (42 U.S.C. § 1981)

24. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

25. 42 U.S.C. §1981 guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts … as is enjoyed by white citizens." The term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[1]

26. Under 42 U.S.C. § 1981, a plaintiff must establish: (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in Section 1981, including the right to make and enforce contracts.[2]

---

[1] 42 U.S.C. § 1981(b).
[2] *Brown v. Philip Morris Inc.,* 250 F.3d 789, 797 (3d Cir. 2001).

27. Castro is a Hispanic male and belongs to a racial minority.

28. Castro attempted to contract with Defendant Georgetown University submitting an application to its Taxation Interview Program whereby employers pay the university $450 in return for interviewing Tax LL.M. candidates and graduates from Georgetown Law.

29. Castro is informed and believes, and based thereon alleges, Defendant Hunter (the Associate Dean of LL.M. and S.J.D. students at Georgetown University Law Center) discriminated against Castro on the basis of his race and denied his application to the Taxation Interview Program – preventing Castro from contracting with the Defendant university.

30. As a result of Defendant's discriminatory actions, Castro has been injured in his person and property because he has been unable to participate in the Taxation Interview Program for the purpose of interviewing new Master of Laws graduates to hire and grow his legal services business Castro & Co., LLC.

## COUNT II
## Willful Retaliation – Defendant Hunter
## (42 U.S.C. § 1981)

31. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

32. In *CBOCS West, Inc. v. Humphries*, the Supreme Court held that 42 U.S.C. § 1981 provides a private cause of action for retaliation.[3] Retaliation claims under § 1981 are analyzed pursuant to Title VII principles. Thus, a plaintiff must show that: (1) he participated in a protected activity; (2) the defendant knew of the protected activity; (3) plaintiff suffered adverse action; and (4) a causal connection between the protected activity and the adverse action.[4]

---

[3] *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452-453, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008)
[4] *Hicks v. Baines*, 593 F.3d 159, 164 (2dCir.2010)

PAGE 7 OF 14

33. Castro participated in a protected activity when he informed the university dean that he felt he was being racially targeted. Defendant Hunter was made aware of the protected activity when the dean assigned an independent law professor to Hunter's allegations about Castro. Castro suffered adverse action when Defendant Hunter vindictively denied his application to Georgetown's Taxation Interview Program. Defendant Hunter's denial of Castro's application discernibly arises from Castro's protected activity.

34. As a result of Defendant Hunter's actions, Castro has been injured in his person and property because he has been unable to participate in the Taxation Interview Program for the purpose of interviewing new Master of Laws graduates to hire and grow his legal services business Castro & Co., LLC.

## COUNT III
**Intentional Discrimination – Defendant Georgetown University**
**(Title VI of the Civil Rights Act, 42 U.S.C. § 2000d)**

35. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

36. Section 601 of Title VI of the Civil Rights Act of 1964 provides that: "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance."[5] Under Title VI, a plaintiff must show: (1) that there is racial or national origin discrimination; and (2) the entity engaging in discrimination is receiving federal financial assistance.[6]

37. Defendant Georgetown University receives federal funds and is thus subject to the requirements of Title VI.

---

[5] 42 U.S.C. § 2000d
[6]

38. Defendant Georgetown University racially discriminated against Castro when Associate Dean Nan Hunter denied Castro access to the university's Taxation Interview Program.

39. As a result of Defendant's actions, Castro has been injured in his person and property because he has been unable to participate in the Taxation Interview Program for the purpose of interviewing new Master of Laws graduates to hire and grow his legal services business Castro & Co., LLC.

## COUNT IV
### Willful Retaliation – Defendant Georgetown University
### (Title VI of the Civil Rights Act, 42 U.S.C. §2000d)

40. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

41. The elements for a claim of retaliation under Title VI, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse action; and (3) there existed a causal link between the adverse action and the protected activity.[7] A plaintiff must also demonstrate that his exercise of protected rights was known to the defendant.[8]

42. Castro engaged in protected activity when he appealed Defendant Hunter's intent to initiate expulsion proceedings to the university dean. Castro apprised the university dean of Defendant Hunter's allegations and that he felt he was being racially targeted.

43. Defendant Hunter was made aware of Plaintiff's exercise of his protected rights when the university dean assigned an independent law professor to determine if Hunter's allegations merited Plaintiff's expulsion – they did not.

---

[7] *Jones v. WMATA*, 205 F.3d 428, 433 (D.C.Cir.2000).
[8] *See Carter-Obaywana v. Howard University*, 764 A.2d 779, 791 (D.C.2001).

44. Castro was subjected to adverse action when Defendant Hunter vindictively abused her position as Associate Dean and instructed the Career Services Center to deny Plaintiff's application to Georgetown University Law Center's Taxation Interview Program.

45. Castro is informed and believes, and based thereon alleges, that Defendant Hunter ordered Career Services to deny Castro's application in retaliation for appealing Hunter's attempt to initiate expulsion proceedings and that he felt he was being racially targeted to the university dean.

46. As a result of Defendant Georgetown University's Associate Dean's vindictive acts, Castro has been injured in his person and property because he has been unable to participate in the Taxation Interview Program for the purpose of interviewing new Master of Laws graduates to hire and grow his legal services business Castro & Co., LLC.

## COUNT V
**Discrimination - Defendant Georgetown University**
**(District of Columbia Human Rights Act §2-1402.41)**

47. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

48. The District of Columbia Human Rights Act ("DCHRA" herein) provides, in pertinent part, that "[i]t is an unlawful discriminatory practice, subject to exemptions in § 2-1401.03(b), for an educational institution: (1) to deny, restrict, or to abridge or condition the use of, or access to, any of its facilities, services, programs, or benefits of any program activity to any person otherwise qualified, wholly or partially, for a discriminatory reason, based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family

responsibilities, political affiliation, source of income, or disability of any individual."[9]

49. Defendant Georgetown University violated the DCHRA when its Associate Dean, Defendant Hunter, denied Castro access to the university's Taxation Interview Program. Castro was wholly qualified for access to TIP and his application was denied for discriminatory reasons based upon Castro's race.

## COUNT VI
## Retaliation – Defendant Hunter
### (District of Columbia Human Rights Act §2-1402.61(a)))

50. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

51. The DCHRA provides that "[i]t shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encountered any other person in the exercise or enjoyment of any right granted or protected under this chapter."[10]

52. For a DCHRA retaliation claim, a plaintiff must allege that (1) he engaged in a protected activity; (2) he was subjected to adverse action; and (3) there is a causal nexus between the two.[11]

53. Defendant Hunter unlawfully retaliated against Castro's when she ordered Career Services to deny his application without providing any explanation for the denial. Castro is informed and believes, and based thereon alleges, Defendant Hunt directed Career Services to deny his application in retaliation for appealing to the Dean Defendant Hunter's attempt to expel him and his concerns of racial discrimination.

---

[9] D.C. CODE § 2-1402.41(1).
[10] D.C. CODE § 2-1402.61(a).
[11] See *Carter-Obayuwana v. Howard Univ.*, 764 A. 2d 779, 790 (D.C.2001).

54. As a result of Defendant Hunter's vengeful acts, Castro has been injured in his person and property because he has been unable to participate in the Taxation Interview Program for the purpose of interviewing new Master of Laws graduates to hire and grow his legal services business Castro & Co., LLC.

## COUNT VII
**Tortious Interference With Prospective Business Relations – Defendant Hunter**

55. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

56. To establish a claim for tortious interference with prospective business relations under District of Columbia law, plaintiff must show: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy; and (4) resultant damage.[12]

57. Castro submitted his application to the Taxation Interview Program with the intent of interviewing qualified candidates and wholly expecting to hire one Georgetown Masters of Law graduate student for his private practice. As the Associate Dean of Georgetown Law's Taxation Program, Defendant Hunter had knowledge of Castro's valid business expectancy – the university itself labels TIP as a job fair. Defendant Hunter intentionally ordered Career Services to deny Castro's application to TIP, causing the termination of Castro's valid business expectancy to hire a Georgetown Law tax graduate for his private practice.

58. As a result of Defendant Hunt's tortious interference, Castro has been injured in his person and property because he has been unable to participate in the Taxation Interview

---

[12] *See Bennett Enters., Inc. v. Domino's Pizza, Inc.,* 45 F.3d 493, 499 (D.C.Cir.1995).

Program for the purpose of interviewing new Master of Laws graduates to hire and grow his legal services business Castro & Co., LLC.

## DAMAGES

59. As a direct and/or proximate result of Defendant's wrongful conduct, Plaintiff has suffered actual, consequential and/or incidental monetary damages.

60. Plaintiff, John Anthony Castro, seeks an award of attorney's fees, litigation costs, administrative costs, expenses, and any other permissible amount to the furthest extent legally permissible under Federal Law.

61. Plaintiff, John Anthony Castro, seeks actual compensatory damages in the amount of $5,000,000.00 for the damage to Castro's business prospects and ability to recruit "some of the most promising young tax students in the country."

62. Plaintiff, John Anthony Castro, seeks judgement for such sum in addition to pre- and post- judgment interest, costs of court, and such other and any other relief to which he may be entitled.

## JURY DEMAND

63. Plaintiff hereby demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff herein respectfully prays that Nan Hunter be cited to appear and answer, and that upon jury trial, he recover a judgment against Nan Hunter for all damages sought, including costs of court, prejudgment interest at the highest rate allowed by law, interest on the judgement at the highest legal rate from the date of judgment until collected, and any

other relief, in law and in equity, to which he may be entitled.

Respectfully submitted,

Dated: March 19, 2018

*Josh Milam*

JOSHUA S. MILAM
Texas Bar No. 24102203
**CASTRO & CO., LLC**
J.Milam@CastroAndCo.com
13155 Noel Road, Suite 900
Dallas, TX 75240
Tel. (214) 998-9607
Fax: (866) 700-7595

**ATTORNEY FOR PLAINTIFF**